Opinion issued August 1, 2017



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-16-00675-CV

_____

**VEDASEH RAMPERSAD, Appellant**

**V.**

**CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-19908**

---

# O P I N I O N

Vedaseh Rampersad appeals the trial court's order granting summary judgment in favor of CenterPoint Energy Houston Electric, LLC on his negligence claim. Rampersad contends that the trial court erred in granting CenterPoint's

traditional and no-evidence motion for summary judgment because CenterPoint failed to conclusively negate the elements of duty, breach, and causation. We affirm.

## Background

At approximately 4:00 p.m. on October 21, 2013, Rampersad was traveling on his motorcycle when he was struck by another driver as he entered the intersection of Queenston Boulevard and Forest Heights Boulevard in Northwest Houston (the "intersection").[1] Rampersad's left leg was severely injured in the accident, which ultimately required amputation of his leg below the knee.

Shortly before the collision, at approximately 3:55 p.m., a stirrup clamp connecting CenterPoint's primary power line to a utility pole approximately 2.5 miles away failed, causing the line to fall. This caused the circuit that serviced the traffic lights at the intersection to become de-energized and the traffic lights to stop working. The stirrup clamp in question was thirty-three years old. The undisputed evidence shows that, within three minutes of the outage, CenterPoint dispatched linemen to the location of the stirrup clamp failure to identify, troubleshoot, and repair the problem. Two minutes later, the accident occurred.

The record reflects that, at the time of the accident, CenterPoint had not been notified of the inoperative traffic lights at the intersection. It is undisputed that the

---

[1]     Kristy Davis, the driver of the 2006 Chrysler Sebring that collided with Rampersad, is not a party to this action.

power outage was not scheduled, planned, or otherwise caused by any contemporaneous action taken by CenterPoint.

The accident report prepared by the responding officer states, in pertinent part, "At the time of the accident, the traffic control lights were disabled. There was no power operating the lights and there were no other forms of traffic control at the intersection informing motorist[s] of the power outage." The report further notes that Rampersad "failed to yield the right-of-way and entered the intersection without stopping."

In his deposition, Rampersad testified that, as he approached the intersection, he noticed that the traffic signal was not working and that he came to a complete stop. He further testified that the other vehicle never stopped at the intersection. When asked what he thought the other driver could have done differently to avoid the accident, Rampersad stated, "[w]atch a little closer to see what is—what is upcoming in front of her and slow down or stop or blow [her] horn, something like that."

Rampersad sued Centerpoint for negligence, alleging, among other things, that CenterPoint failed to properly install, inspect, and maintain the stirrup clamp. CenterPoint filed a hybrid no-evidence and traditional motion for summary judgment on Rampersad's claims as well as a motion to exclude the testimony of Rampersad's designated expert, Graviel Garcia. Following a hearing, the trial court

granted CenterPoint's summary judgment motion and denied CenterPoint's motion to exclude Garcia's testimony as moot. Rampersad filed a motion for new trial and motion for reconsideration which the trial court denied. This appeal followed.

**Discussion**

CenterPoint moved for summary judgment on Rampersad's negligence cause of action on the grounds that Rampersad presented no evidence to satisfy the elements of duty and breach, and that the evidence conclusively established that CenterPoint's installation of the stirrup clamp was not the proximate cause of Rampersad's injuries. On appeal, Rampersad argues that the trial court erred in granting summary judgment in favor of CenterPoint because a fact issue exists as to each of these elements.

**A. Standard of Review**

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any one of the grounds is

4

meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Hahn*, 321 S.W.3d at 524; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

Where, as here, a trial court grants a summary judgment involving both no-evidence and traditional grounds, we ordinarily address the no-evidence grounds

first. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, if we conclude that we must affirm the trial court's summary judgment ruling on traditional grounds, we need not review the no-evidence grounds. *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 59 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Wilkinson v. USAA Fed. Sav. Bank Trust Servs.*, No. 14–13–00111–CV, 2014 WL 3002400, at \*5 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.) (affirming summary judgment on traditional grounds, without considering alternative no-evidence grounds, where evidence conclusively proved defendants were entitled to judgment as a matter of law).

## B. Causation

The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The components of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).

The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without which the harm would not have occurred. *IHS Cedars Treatment Ctr. Of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d

794, 799 (Tex. 2004); *Boys Clubs*, 907 S.W.2d at 475. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799; *Boys Clubs*, 907 S.W.2d at 475. In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause. *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799 (citing *Boys Clubs*, 907 S.W.2d at 475, *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995), and *Lear Siegler v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)).

Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016); *Boys Clubs*, 907 S.W.2d at 478. The question of foreseeability, and proximate cause generally, involves a practical inquiry based on "common experience applied to human conduct." *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987) (quotation omitted). It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *Boys Clubs*, 907 S.W.2d at 478 (quoting *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980)). Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant should have

7

anticipated that his conduct would bring about an injury. *See Boys Club*, 907 S.W.2d at 478 (citing RESTATEMENT (SECOND) OF TORTS § 435(2) (1965)). Conjecture, guess, and speculation are insufficient to prove cause in fact and foreseeability. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009).

## C. Analysis

Rampersad argues that CenterPoint's failure to properly install the stirrup clamp was a "substantial factor" in leading to the accident without which the accident would not have occurred. In his summary judgment response and on appeal, Rampersad asserts that the failed clamp was the sole cause of the power outage which rendered the traffic signals at the intersection inoperable. He argues that but for CenterPoint's negligent installation of the stirrup clamp, the traffic signals would have been operating and he would not have entered the intersection at the same time as Davis, and therefore, the collision would not have occurred. Assuming without deciding that CenterPoint's installation of the stirrup clamp was a substantial factor in bringing about the accident, we focus on the issue of foreseeability—that is, whether Rampersad's injuries might have been reasonably anticipated as a result of CenterPoint's conduct.

CenterPoint argues both in its summary judgment motion and on appeal that even if its installation of the stirrup clamp was a cause in fact of Rampersad's

injuries, any liability on its part was cut off by an intervening and superseding cause. CenterPoint contends that the evidence conclusively established that Rampersad's and/or Davis's failure to treat the intersection as a four-way stop, in violation of the governing traffic laws,[2] is an intervening, superseding cause of the collision that extinguishes any liability on CenterPoint's part.

Although there can be more than one proximate cause of an injury, *see Travis*, 830 S.W.2d at 98, a new and independent, or superseding, cause may "intervene [ ] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.). A new and independent cause thus destroys the causal connection between the defendant's negligence and the plaintiff's harm, precluding the plaintiff from establishing the defendant's negligence as a proximate cause. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *Dew*, 208 S.W.3d at 450. In contrast, a concurring cause "concurs with the continuing and co-operating original negligence in working the injury," leaving the causal connection between the defendant's negligence and the plaintiff's harm intact. *Stanfield*, 494 S.W.3d at 98 (quotation omitted).

---

[2]     *See* TEX. TRANSP. CODE ANN. §§ 544.007, 545.151 (West 2011) (requiring drivers to stop at intersection where traffic lights are present but not working).

9

There are no Texas cases which address the precise issue before us. The parties direct this Court to a number of cases from other jurisdictions addressing whether a utility can be held liable for injuries arising from an automobile collision at an intersection whose traffic lights were inoperative. We examine these cases below.

Rampersad relies primarily on the Florida Supreme Court's opinion in *Goldberg v. Florida Power & Light Co.*, 899 So. 2d 1105 (Fla. 2005). In that case, the Goldbergs brought wrongful death and negligence actions against Florida Power & Light ("FPL") after their daughter was killed in a motor vehicle collision that occurred at an intersection where the power company had terminated power to a traffic light. *See id*. at 1108. The court held that, when viewed in light of the facts of the case, the motorists' failure to treat the inoperable traffic signal as a four-way stop could not be characterized as intervening and superseding causes as a matter of law totally relieving FPL of its responsibility for breaching its duty of care. *See id.* at 1119.

*Goldberg* is distinguishable from the case before us in several significant respects. In *Goldberg*, FPL intentionally terminated the flow of power which rendered the traffic signal inoperable. *See id*. at 1108. Here, it is undisputed that the power outage was not scheduled, planned, or otherwise caused by any action taken by CenterPoint. The evidence in *Goldberg* also revealed that FPL was aware, or

10

should have been aware, of the inoperative traffics signals prior the accident. *See id*. at 1111–12. The fuse used to deactivate the line was on a pole 100 to 150 feet from the intersection which was clearly visible from the pole. *See id*. In contrast, the summary judgment evidence in this case shows that at the time of the accident (which occurred only moments after the power outage), CenterPoint had not been notified of the inoperative traffic lights at the intersection. Additionally, the *Goldberg* court noted that FPL had sufficient time to initiate necessary safety measures on the day of the accident, it had dismissed an officer who "could have and would have easily assisted in making the intersection safe for travel," and that, even in the officer's absence, FPL had experienced personnel on the scene who were equipped with the items necessary to warn motorists of the inoperable traffic light. *See id*. at 1112. The court held that "FPL had a clear duty to warn motorists of the hazardous situation it created . . . ." *Id*. at 1113.

The court recognized the established principle that "the power company should not be held responsible every time power to a traffic signal ceases," and stated, "Certainly, in the event of an emergency mechanical failure, FPL may not know, or know in a timely manner, that service to a traffic signal has been interrupted." *Id*. at 1114. It then noted that the case before it—in which "an FPL repairman acted in a deliberate manner that rendered a single, clearly perceptible traffic signal inoperative as a part of the repair process"—was not such a case. *Id*.

11

at 1114—15.  The court held, "The essential problem in this case is that FPL did nothing, despite its employee's constructive knowledge of the hazard posed by his affirmative act."  *Id.* at 1111 n.3.

In *Goldberg*, the Florida Supreme Court created a narrow duty on the part of the power company, based on a detailed, fact-intensive analysis of the case before it.  In doing so, it departed from the usual resolution of inoperative traffic signal cases in Florida.  *See Levy v. Fla. Power & Light Co.*, 798 So. 2d 778, 780 (Fla. Dist. Ct. App. 2001) (determining that power company does not owe duty to noncustomer injured in intersection collision because its negligence rendered traffic signal inoperable).  None of the facts which make *Goldberg* unique are present in the case before us.

Rampersad cites several additional cases in support of his position that unmaintained, malfunctioning, or failed traffic devices can be the proximate cause of a traffic collision, even in the face of driver negligence.

In *Marshall County v. Uptain*, 409 So. 2d 424 (Ala. 1981), the plaintiff sued the county for injuries arising from an automobile accident allegedly caused by the county's negligence in failing to re-erect a stop sign at an intersection.  *See id.* at 425.  Affirming the lower court's judgment in favor of the plaintiff, the appeals court concluded that it was foreseeable that, as a result of the county's negligence in failing to re-erect the stop sign that had been reported knocked down nearly two years

12

earlier, a car might travel through the intersection without stopping, resulting in an accident. *See id.* at 426.

In *Thorpe v. City and County of Denver*, 494 P.2d 129 (Colo. App. 1971), the plaintiff's husband was killed after his vehicle entered an intersection and collided with another vehicle. *See id*. at 131. The plaintiff sued the city based on its alleged failure to repair a malfunctioning traffic light of which it was aware. *See id.* at 130. The appeals court affirmed the lower court's judgment rendered on the jury's verdict in favor of the plaintiff. *See id.* at 131.

In *Campbell v. City of Tucson*, 418 P.2d 401 (Ariz. 1966), the plaintiffs sued the court for personal injuries and wrongful death arising out of an automobile collision at an intersection whose traffic lights were inoperative at the time of the accident. *See id.* at 402. It was discovered after the accident that the power switch controlling the electric power to the signal had been tampered with by an unknown person. *See id.* In reversing the directed verdict granted in favor of the city, the appeals court concluded that evidence showing that the switch handle of the light in question was exposed while other switches were concealed in padlocked boxes, that the city had notice that two switch boxes with padlocks had been tampered with within several months of the accident, and that there was typically a large volume of traffic at the intersection, raised a jury question as to whether the city was negligent in maintaining the signal. *See id*. at 404.

In *Bentley v. Saunemin Township*, 413 N.E.2d 1242 (Ill. 1980), an administrator sued the township and highway commissioner on behalf of the estate of a passenger who was killed in an automobile collision at an intersection at which a stop sign was obscured by foliage. *See id.* at 1243. The Illinois Supreme Court affirmed the appeals court's judgment notwithstanding the verdict in favor of the plaintiff, concluding that the township and commissioner should have foreseen that a driver, without the benefit of a stop sign, might fail to recognize an approaching hazard and enter the intersection without stopping. *See id.* at 1244.

In *Dixie Drive It Yourself System New Orleans Co. v American Beverage Co.*, 137 So. 2d 298 (La. 1962), a truck owner whose vehicle was damaged in a collision with a tractor-trailer sued the owner of the tractor-trailer for property damage. *See id.* at 300. Reversing the appeals court's judgment dismissing the truck owner's action, the Louisiana Supreme Court held that the tractor-trailer driver's failure to set out signal flags required by law when his tractor became disabled and stopped on a portion of the highway on a rainy day proximately caused the rear-end collision. In reaching its conclusion, the court noted that "[t]he objective of the statutory provisions violated in the instant case was to protect against the likelihood that an oncoming motorist, whether cautious, confused or inattentive, would fail to timely perceive the vehicle or that it was stationary and become involved in an accident." *Id*. at 306.

In *Wood v. State*, 492 N.Y.S.2d 481 (N.Y. App. Div. 1985), a driver and his wife were killed when their vehicle collided with a tractor-trailer at an intersection at which the traffic signal had not been working for a period of time. *See id.* at 482. The administrator of the driver's estate brought a wrongful death action against the State, and the lower court rendered judgment in favor of the State. *See id.* at 484. The appeals court reversed the judgment, concluding that, in addition to the driver's negligence, the State was negligent in failing to repair the inoperative traffic light of which it was aware. *See id.* 483.

Each of the foregoing cases cited by Ramperad is distinguishable from the case before us. In *Marshall County*, *Thorpe*, *Bentley*, and *Wood*, the defendant was aware of the unmaintained or malfunctioning traffic device before the accident occurred. In *Campbell*, a case in which the traffic signal was tampered with by an unknown person, the city had notice that two other traffic devices had been tampered with in the months preceding the accident. And in *Dixie Drive It Yourself*, the tractor-trailer driver's negligence in failing to set out signal devices violated the very law intended to protect against the likelihood of the type of accident that occurred.

We next examine the cases cited by CenterPoint. In *Quirke v. City of Harvey*, 266 Ill. App. 3d 664, 670, 203 Ill. Dec. 536, 639 N.E.2d 1355 (Ill. App. Ct. 1994), an automobile collision occurred at an intersection after the utility turned off the city's major power line, rendering the traffic signals and overhead street lights at the

15

intersection inoperable. *See* 639 N.E.2d at 1356. The plaintiff, an injured passenger of one of the motorists involved in the collision, sued the city and the utility company for negligence, and the trial court granted summary judgment for the city and utility. *See id.* at 1357. The appeals court affirmed, concluding that the actions of city officials and the utility in turning off the power line supplying traffic signals and street lighting was not the proximate cause of the accident. *See id.* In reaching its conclusion, the court noted that the defendants "could not have reasonably foreseen that one or both of the drivers would violate their statutory duty to treat an inoperable traffic light as a stop sign and then proceed into the intersection." *Id.* ("The City of Harvey and Commonwealth Edison cannot be held legally responsible for the remote risk that someone, when encountering a major intersection that has been rendered dark due to an emergency power shutdown, will disregard the rules of the road and proceed through the intersection without stopping.").

In *Logan v. Phillips*, 896 S.W.2d 38 (Mo. Ct. App. 1994), a husband and wife appealed the dismissal of their personal injury claim stemming from a motor vehicle accident in which the wife was injured and their daughter was killed. *See id.* at 39. At the time of the accident, the traffic signals at the intersection in question were inoperable due to a power failure. *See id.* A police officer entered the intersection out of turn, and at an excessive rate of speed, colliding with the wife's vehicle in which the daughter was a passenger. *See id.* The appeals court initially noted that

16

where two or more persons are guilty of consecutive acts of negligence closely related in time, a question arises as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause. *See id.* The court affirmed the dismissal, concluding that the utility's alleged negligence in failing to provide continuous power to the traffic signals where the accident occurred was "too remote to be the proximate cause" and that "the power failure provided only the condition or occasion of the injury." *Id.* at 42.

In *Quintana v. City of Chicago*, 230 Ill. App. 3d 1032, 172 Ill. Dec. 84, 596 N.E.2d 128 (Ill. App. Ct. 1992), a pedestrian who was injured when she was struck by a car at an intersection where the traffic lights were inoperative sued the city and drivers involved in the accident for negligence. *See* 596 N.E.2d at 128–29. The trial court granted the city's motion for summary judgment, and the plaintiff appealed. *See id*. at 129. In affirming summary judgment in favor of the city, the appeals court concluded that the "inoperative traffic lights were just a condition by which the injury was made possible. Any causal connection between the original wrong and the injury was broken by the conduct of the drivers." *Id.* at 130. The court further noted that the fact that there was conflicting testimony as to which driver entered the intersection first was immaterial to the question of the city's liability: "The fact that one of the parties failed to comply with the statute either by not yielding to the other, or proceeding into the intersection without stopping, violated [the relevant Illinois

17

statute]." *Id.* The court held that the failure of one of the drivers to comply with the statutory requirements was the proximate cause of the plaintiff's injuries. *Id.*

In *Chowdury v. City of Los Angeles*, 38 Cal. App. 4th 1187, 1190, 45 Cal. Rptr. 2d 657 (Cal. Ct. App. 1995), a driver died in an automobile accident after the driver of another vehicle failed to stop before proceeding through the intersection while the traffic signals were inoperative in all directions due to a power outage. *See* 38 Cal. App. 4th at 1190. The trial court held that the accident and death were caused by the city's failure to correct a known dangerous condition of its property and by creating a trap for motorists. *See id.* at 1191. The appeals court reversed the judgment, noting that motorists approaching the intersection were bound not by the city's inoperative light, but by the provisions of the relevant statute, which effectively transform an inoperative signal light into a stop sign. *See id.* at 1195. The court concluded that "[t]he City cannot be charged with foreseeing that a motorist will recklessly disobey traffic laws and speed through an intersection without heed to its inoperative traffic lights any more than it can be charged with foreseeing that irresponsible drivers will race at 100 miles per hour down a highway or drive the wrong way down a one-way street, in violation of the traffic laws." *Id.* at 1195–96.

In *Terrill v. ICT Insurance Co.*, 93 So. 2d 292 (La. Ct. App. 1957), the petitioner sued the electric company for damages resulting from a collision between

a vehicle driven by his son in which the petitioner was a passenger and another vehicle. *See id.* at 293. The petition alleged that, at the time of the collision, the traffic lights at the intersection were inoperative. *See id.* The lower court ruled in favor of the electric company, and the appeals court affirmed. *See id.* at 295. In its opinion, the court noted that "upon noticing the non-operation of the light it became incumbent upon the [petitioner's son] to exercise precaution before entering the intersection." *Id.* The court concluded that "[t]he proximate cause of the accident was obviously the failure of one or both of the drivers to exercise precaution, and the failure of the traffic light at most was a remote cause of the accident." *Id.* at 295.

Rampersad urges us, instead of finding the conduct of the drivers to be a superseding cause, to consider the power failure as at least a concurring cause of the accident along with the negligence of the drivers. As we discussed above, a concurring cause "concurs with the continuing and co-operating original negligence in working the injury" leaving a causal connection between the original negligence and plaintiff's injury. *Stanfield*, 494 S.W.3d at 98. Is the alleged negligence of the power company in installing the stirrup clamp a concurring cause such that we can ignore the passage of time, geographical remoteness to the accident, and the conduct of independent agencies, in order to connect the stirrup clamp's failure to Rampersad's injuries?

19

One of the lead cases in this area is *Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968). *Bell* concerned a serious traffic accident wherein two cars collided and a trailer being pulled by one of them blocked the road. *See id.* at 118. While several people were attempting the clear the trailer from the road, the trailer was struck by another automobile, resulting in injury and death. *See id.* The question was whether or not the petitioners (the plaintiffs below) could properly sue the respondents (the drivers involved in the first collision) for the injuries caused by the second collision because without the first collision, the trailer would not have blocked the road and the second collision would not have occurred. *See id.* at 120. The trial court rendered judgment for the respondents and the court of appeals affirmed. *See id.*

The Court engaged in an extended analysis of the distinction between concurring causes and superseding causes. *See id.* at 121–22. The Court found that the injuries would not have occurred but for the negligence of the respondents "which created the condition that made the second collision possible." *Id.* at 120. However, the Court went on to make a distinction between the two collisions by saying that the "active and immediate cause of the second collision . . . was an entirely independent agency," the driver of the second car. *Id.* It further pointed out that the "forces" generated by the first collision had "come to rest," and no one was in any "danger" from them and "[n]o one would have been injured if there had not been a second collision." *Id.* This is significant because the Court summarized its

20

analysis of a string of cases that found liability for injuries resulting from concurrent causes by saying that the common thread of those cases was that the condition created by the defendant's negligence was "an active and efficient cause" of the injuries sustained. *Id.* at 122. The Court noted that, in those cases, electric wires negligently maintained, a leaking gas line which the defendant negligently failed to inspect and repair, and gasoline negligently drained[3] were concurring causes of injury because they were an active element in a chain of events which combined with another active element to cause injury. *See id.* The Court drew a distinction between these cases and the case before it by pointing out the acts and omissions charged against the drivers of the first collision "had run their course and were complete." *Id.* The Court found that the respondents' negligence did not "actively contribute" to the injuries sustained but simply created "a condition" that allowed the injuries caused by a third party and was not a concurring cause of those injuries. *Id.* This analysis has been applied to a wide variety of fact situations.

In *IHS Cedars Treatment Centers of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794 (Tex. 2004), the plaintiff sued a psychiatric hospital and its staff for

---

[3]   *See Tex. Power & Light Co. v. Holder*, 385 S.W.2d 873, 881 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.); *Tex. Pub. Serv. Co. v. Armstrong*, 37 S.W.2d 294, 295 (Tex. Civ. App.—Austin 1931, writ ref'd); *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442, 448 (1941); *Robert R. Walker, Inc. v. Burgdorf*, 150 Tex. 603, 244 S.W.2d 506, 508 (1951).

injuries that occurred when she was injured in the wreck of a car driven by her former hospital roommate. *See id.* at 799. Her complaint was that but for the negligent discharge of herself and her roommate, she would not have been in a car being driven by the roommate twenty-eight hours later and would not have been injured. *See id.* at 800. The Texas Supreme Court held that while the alleged negligence of the caregivers in discharging the plaintiff provided the opportunity to be with her roommate at the fatal hour, it would be "philosophical" to argue that the discharge "caused" the plaintiff's injuries.[4] *Id.* at 800. There was a "causal link" between these two separate and sequential tortious events but that link was too remote to be "legally significant." *Id.*

In *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995), the plaintiff was injured as she was leaving the scene of a fire which had been caused by an allegedly defective pump. *See id.* at 774. She sued the pump manufacturer for her injuries on the theory that she would not have been at the location of the fire or have slipped on the wet pipe rack if the defective pump had not started the fire that caused

---

[4] The "philosophical" reference is an allusion to the Second Restatement of Torts which was cited at length with approval by the Supreme Court in *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991). The Court quoted the Restatement for its comments drawing a distinction between what is such a "substantial factor" in causing harm that it conveys the idea of responsibility for the harm and the so-called "philosophic sense" of causation which includes all of the events without which any specific event would not have occurred but which have no legal consequences. *Id.* at 472 (quoting RESTATEMENT (SECOND) OF TORTS § 431, cmt. a (1965)).

water to be used to put it out.  *See id.*  The Supreme Court found that "[e]ven if the pump fire were in some sense a 'philosophic' or 'but for' cause of [the plaintiff's] injuries, the forces generated by the fire had come to rest when she fell off the pipe rack."  *Id.* at 776.  "[T]he pump fire did no more than create the condition that made [the plaintiff's] injuries possible."  *Id.*

Similarly, in the case before us, the negligent act alleged was the installation of a stirrup clamp.  The act of negligence was complete and it remained at rest for thirty-three years.  Even if we conflate that allegedly negligent act of installation with the stirrup clamp's failure and the power failure causing the traffic light to go out, the analysis is the same.  The results of the negligent act, the forces generated by the negligent act, had come to rest without injury to anyone.  The light was hanging there, uncommunicative and passive, waiting to be treated as a four-way stop sign.  It required the negligent act of an independent agency, one of the drivers involved in the collision, to cause Rampersad's injuries.

On the issue of foreseeability, we find the courts' rationale in *Quirke*, *Logan*, *Quintana*, *Chowdury*, and *Terrill* persuasive.  CenterPoint could not have reasonably foreseen that the alleged improper installation of a stirrup clamp would lead to its failure thirty-three years later and result in a power outage affecting traffic signals at an intersection more than two miles away, in which one or two drivers would violate their statutory duty to treat an inoperable traffic light as a four-way stop.  The

23

fact that that there is conflicting evidence as to whether one or both drivers failed to yield the right of way, or entered the intersection without stopping, is irrelevant to the question of CenterPoint's liability. At least one of the drivers did not comply with the governing traffic laws by failing to stop or yield the right of way, and it is this failure that proximately caused Rampersad's injuries. *See Quirke*, 630 N.E.2d at 1357; *Logan*, 896 S.W.2d at 42; *Quintana*, 596 N.E.2d at 130. Because driver conduct constituted an intervening and superseding cause of the collision, CenterPoint cannot be held liable for Rampersad's injuries. We overrule Rampersad's issue.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Jennings, Higley, and Lloyd.