**Opinion issued March 31, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00310-CV

————————————

**JASON RITENOUR, Appellant**

**V.**

**CENTRECOURT HOMEOWNERS ASSOCIATION, INC.; ASSOCIA HILL COUNTRY, INC.; REBECCA TRAVELSTEAD; GARY E. DOUCHA; AND JENNIFER LUCINDA RAMAN, Appellees**

**On Appeal from the 98th District Court[1]**
**Travis County, Texas**
**Trial Court Case No. D-1-GN-18-001651**

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION**

This appeal arises from a dispute between a homeowner and his homeowner's association, three individual board members, and a property management company. The homeowner claims that a 2017 drainage project in the common area around his property caused damage to his property. He asserted claims for breach of contract, negligence, violation of the Deceptive Trade Practices Act, violation of the Texas Water Code, breach of fiduciary duty, and civil conspiracy. The trial court granted no-evidence motions for summary judgment filed by the association and its members and by the property management company. The homeowner appeals, and we affirm.

**Background**

Appellant Jason Ritenour owns a condominium in the Centrecourt Townhouse community in Austin. The property is part of a community of 57 units in a series of multiplex buildings. Centrecourt Townhomes is part of the Courtyard subdivision and was created in 1982 as a non-profit corporation governed by the Centrecourt Homeowners' Association ("CHOA"). Pursuant to its "Supplementary Declaration of Covenants, Conditions, and Restrictions," filed in November 1991, the CHOA is responsible for the maintenance and repair of the townhome common areas.

Ritenour purchased his condominium in April 2007. His property is the last unit of a four-unit building, and the building is located at the bottom of a hill. Each unit has a garage that is accessible by a common driveway at the rear of the units.

Due to the natural slope of the property, surface water flows toward the units in addition to flowing downhill toward Ritenour's property. Each of the bottom three units in the four-unit building where Ritenour lives has a grate-covered trench that is as wide as the garage. The trenches are in front of each unit's garage. The trenches are connected with pipes that allow water to travel underground. The trench in front of Ritenour's unit is the exit point for uphill water.

In 2014, the area around Ritenour's property was excavated to determine the source of a water leak. The rock steps and retaining wall located in the common area adjacent to Ritenour's property were removed. The excavation revealed a broken pipe connecting the trenches between in front of Ritenour's neighbor's garage and Ritenour's garage. After the pipe was removed, there was nothing to direct the flow of water to Ritenour's trench, which led to pooling of water on Ritenour's property. An electric conduit, which is a PVC pipe containing electrical wires, was also exposed in the 2014 excavation. The conduit is near Ritenour's property.

Ritenour and the CHOA have a contentious relationship. Ritenour has sued the CHOA on three occasions. In 2016, he sued the CHOA for various causes of actions related to drainage issues. The CHOA hired a professional engineer and adjusted the drainage system so that water was removed more efficiently near Ritenour's property. Ritenour dismissed his suit.

In 2017, the CHOA undertook a project to replace a broken pipe discovered during an earlier project and to extend the garage trench in front of Ritenour's property. All of these repairs were located in the common area.[2] The extended trench contained water from the uphill trenches to reduce the flow of water onto Ritenour's property. The repairs were completed in May 2017.

In 2018, Ritenour filed the underlying lawsuit against the CHOA, three individual board members, and Associa, the property management company. He alleged damages resulting from the 2017 work performed in the common area. He asserted five claims against Associa and six claims against the CHOA and its board members.

The CHOA together with its board members filed a no-evidence summary judgment motion seeking the dismissal of all of the claims against them. Associa also filed a no-evidence summary judgment motion seeking the same relief. In their motions, they listed several elements of Ritenour's claims for which there was no evidence. They also claimed that Ritenour had not presented a scintilla of evidence regarding damages. Damages is a common element of all of the claims Ritenour alleged. The appellees also filed a plea to the jurisdiction arguing that Ritenour did not have standing to assert claims for damages in the common area.

---

[2] Part of the retaining wall is on Ritenour's property, but Ritenour has not claimed damage to the retaining wall.

The court denied the plea to the jurisdiction and granted the no-evidence motions for summary judgment. Ritenour appealed.

## No-Evidence Summary Judgment

Ritenour argues that the trial court erred by granting the appellees' no-evidence motions for summary judgment against him. He argues that he presented more than a scintilla of evidence to raise a fact issue as to each of the disputed elements of his claims. Ritenour asserted five causes of action against Associa and six causes of action against the CHOA and its board members. Each of the causes of action requires Ritenour to demonstrate that he suffered damages. *Kraft v. Langford*, 565 S.W.2d 223, 229 (Tex. 1978) (noting elements for statutory claim under TEX. WATER CODE § 11.086(a)); *Rampersad v. CenterPoint Energy Houston Elec., LLC*, 554 S.W.3d 29, 33 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (negligence); *Dailey v. Thorpe*, 455 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (civil conspiracy); *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 323–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (op. on reh'g) (breach of contract); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (violation of DTPA); *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (breach of fiduciary duty). The appellees contend that the trial court did not err in granting their

motions for no-evidence summary judgment on every claim because Ritenour failed to present a scintilla of evidence that he suffered damages. We agree.

## A.   Standard of Review

Texas Rule of Civil Procedure 166a(i) provides that "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of a claim on which the nonmovant would have the burden of proof at trial. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). The

6

trial court must grant the motion unless the nonmovant produces summary judgment evidence that raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

A no-evidence summary judgment will be sustained on appeal when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the nonmovant to prove a vital fact; (3) the nonmovant offers no more than a scintilla of evidence to prove a vital fact; or (4) the nonmovant's evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

## B.     Damages to Common Area

Ritenour requested relief for costs associated with repairing the common area. We first address whether he has standing to bring suit for damages to the common area without including all condominium owners. Standing is an element of subject matter jurisdiction that cannot be waived and may be raised for the first time on appeal by a party or sua sponte by a reviewing court. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). The CHOA raised the issue

7

in their plea to the jurisdiction, which was denied, in their reply to summary judgment, and on appeal. Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Pursuant to the CHOA's covenants and restrictions, the common area is owned by all homeowners in the community. They hold an "undivided, non-partitionable interest in the common areas and private streets." Under Texas law, condominium ownership combines separate ownership of individual units with joint ownership of common elements. *See* TEX. PROP. CODE § 81.002(3). The CHOA covenants grant each owner an undivided interest in the common elements.

A cotenant in a condominium project may proceed alone, individually, to seek redress in the form of damages for misuse of common property, only absent any objection by the condominium association that the other cotenants must be joined. *Canyon Vista Prop. Owners Ass'n, Inc. v. Laubach*, No. 03-11-00404-CV, 2014 WL 411646, *4 (Tex. App.—Austin Jan. 31, 2014, no pet.) (mem. op.). Absent objection from the association, the cotenant may proceed with the action, recovering only the amount to which he shows himself entitled according to his proportionate interest in the common property. *Id.*

The appellees objected to Ritenour pursuing claims and recovering for damages to the common area. Therefore, Ritenour cannot pursue claims for damage

to property owned by all 57 property owners as cotenants unless they all joined. *Id.* They did not. Even if Ritenour showed proof of damage to the common area, he does not have standing to recover his proportionate share of the damages because he did not join the other cotenants. We hold that Ritenour does not have standing to pursue relief for damages to the common area.

## C.     Damages to Ritenour's Property

We turn to Ritenour's claims for damage to his own property.

### 1.     The correct measure of damages is cost of repair because any alleged damages are temporary.

We first must determine the proper measure of damages to Ritenour's property. "[T]he purpose of the law 'in every case, is to compensate the owner for the injury received, and the measure of damages which will accomplish this in a given case ought to be adopted.'" *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 482 (Tex. 2014) (quoting *Pac. Express Co. v. Lasker Real-Estate Ass'n*, 16 S.W. 792, 793 (1891)).

The proper measure of damages for injury to real property turns on whether the damages are temporary or permanent. Whether injury to property is temporary or permanent is a question of law. *Wheeler*, 449 S.W.3d at 484. The general rule is that the proper measure of damages for permanent injury is loss in fair market value, and the proper measure of damages for temporary injury is the cost to restore or replace plus loss of use. *Id.* at 482.

Permanent real property damage occurs when property cannot be repaired or fixed, or if it can, the injury is substantially certain to recur repeatedly, continually, and regularly. *Wheeler*, 449 S.W.3d at 481. Damage to real property is considered temporary if it can be repaired or fixed, and any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable. *Id.*

Ritenour argues that his property is permanently damaged because it diminished in value. Conversely, Ritenour's own evidence shows that any alleged damage to his property is capable of repair, and therefore, his damages are temporary as a matter of law. The testimony from two of Ritenour's experts stated that any drainage issues at the condominium complex could be fixed for less than $30,000. This evidence demonstrates that the alleged damage is not permanent because it is capable of repair. *Wheeler*, 449 S.W.3d at 481.

Ritenour submitted no evidence that his property has suffered permanent damage aside from diminution of value. He presented no evidence that even with the repairs his experts recommend, the drainage and water issues would be continual or regularly recur. *See Wheeler*, 449 S.W.3d at 481. After reviewing the record, we find no evidence that even when repaired, the property would continue to suffer permanent damage, nor do we find evidence that any alleged damages are likely to regularly recur. Because Ritenour's evidence showed that the damage could be

remedied for far less than the value of the property, the alleged damages were temporary. *See id.*

## 2. Ritenour did not present evidence of damage to his own property.

Other than evidence purporting to establish diminished property value, which we have concluded is not the appropriate measure of damages, Ritenour did not present any evidence of actual damage to his property. Ritenour presented testimony from two experts that he hired to prepare bids to repair the common area drainage issues. The affidavit from Chris Maxwell-Gaines, a civil engineer hired by Ritenour, stated that he had reviewed the "drainage project adjacent to" Ritenour's condominium. Maxwell-Gaines proposed approximately $21,000 in repairs. Ritenour also produced a report from a mechanical engineer, James Norris of Fundamental Engineering. He proposed a different solution to Ritenour's alleged problems, involving moving a pipe in the driveway. Ritenour then asked Maxwell-Gaines to submit a bid to implement Norris's solution. The second estimate was approximately $29,000, yet Maxwell-Gaines testified that the more expensive project included unnecessary repairs.

Both Maxwell-Gaines and Norris testified that they had not observed any damage to Ritenour's property. Ritenour presented no evidence of structural damage, foundation damage, water entering his home, or mold damage. Neither expert proposed remedial work on Ritenour's property. Essentially, the experts

11

proposed different ways to construct the common area drainage project than the manner it was constructed by the CHOA in 2017.

Ritenour also alleged that an exposed electric conduit in the common area poses a health and safety concern to him. Ritenour did not present evidence of damage to his property caused by any alleged deficiency in the conduit. He did not present evidence that any hole or crack in the conduit was not repaired. Nor did he present evidence that the conduit is not sufficiently buried under concrete or that he has electrical problems in his condominium.

Ritenour's expert, Norris, opined in his affidavit that the electrical feed to Ritenour's condominium violates the National Electrical Code because it is not buried at least eighteen inches below grade. But Norris admitted in his deposition that he could not determine the depth of the conduit and that he is not an expert on the National Electrical Code. He also testified that the only way to know if there was a crack in the conduit is to excavate it. Norris could not support his assertion that the conduit was a safety hazard since he could not opine that it was damaged or inadequately buried. Ritenour presented no evidence that the conduit was damaged as a result of 2017 CHOA projects nor did he present evidence that it was inadequately buried, and he did not present evidence demonstrating how any issue with the conduit caused him damage.

Ritenour's evidence does not raise a material fact issue as to damages. The trial court did not err in granting the appellees' no-evidence motions for summary judgment because each claim that Ritenour alleged required a showing of damages, and Ritenour failed to present a scintilla of evidence that his property had suffered damage.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Landau.