**Affirmed in Part and Reversed in Part and Opinion filed October 26, 2023.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### NO. 14-22-00160-CV

## MASSAGE HEIGHTS FRANCHISING, LLC, Appellant

### V.

## DANETTE HAGMAN, Appellee

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-02795**

## OPINION

Appellant Massage Heights Franchising, LLC ("MH Franchising") appeals a judgment in favor of appellee Danette Hagman ("Hagman") following a jury trial. MH Franchising presents four issues on appeal: (1) it is not liable under a negligence theory, (2) it is not liable under a negligent-undertaking theory, (3) Hagman may not recover punitive damages because the cause of Hagman's injury was a criminal act, and (4) a new trial is warranted. Because Hagman's injury was caused by a criminal act and § 41.005 of the Texas Civil Practice and Remedies

Code prohibits the award of punitive damages for the criminal acts of another, we reverse the part of the trial court's judgment awarding punitive damages against MH Franchising and affirm the remainder of the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.005.

## I. BACKGROUND

MH Franchising licenses its trademarks, service marks, and its business system[1] to franchisees. The franchisees then operate a business offering professional therapeutic and facial massage services to the general public under the "Massage Heights" name and emblem while providing the Massage Heights services. The relationship between MH Franchising and the franchisee is governed by a contract ("the franchise agreement") and MH Franchising's daily operation manual ("the Manual"). In 2015, MH Franchising granted MH Alden Bridge, LLC ("MH Alden Bridge") a franchise location in The Woodlands, Texas. MH Alden Bridge is owned by OMG MH Holdings, LLC ("OMG Holdings"), of which Eric Oliver ("Oliver") is its president.

On or about September 7, 2017, Hagman was sexually assaulted by her masseuse, Mario Rubio ("Rubio"), during a massage at the MH Alden Bridge location. Hagman brought a lawsuit against Rubio, OMG Holdings, Oliver, MH Alden Bridge, and MH Franchising asserting multiple claims for negligence, premises liability, vicarious liability, respondeat superior, violations of the Texas Deceptive Trade Practices Act, and gross negligence.[2]

Hagman's claims were tried before a jury. Hagman presented testimony

[1] MH Franchising's business system consists of the standards, systems, concepts, identifications, methods, and procedures developed or used by MH Franchising for the sales and marketing of MH Franchising's services and products.

[2] MH Franchising was the only defendant to appear at trial and is the only party to appeal the trial court's judgment.

from Ben Benjamin ("Benjamin"), an expert on the massage industry; Mark C. Siebert, who testified regarding franchise operations; Shane Evans ("Evans"), who founded MH Franchising, served as its CEO, and is a current board member; and Crystal Lizama, MH Franchising's former vice-president of business development. The jury also heard testimony from various witnesses regarding the effect the assault had on Hagman. Hagman introduced into evidence, in relevant part, emails showing that MH Franchising was aware of sexual assaults at its franchises; a copy of the franchise agreement for the MH Alden Bridge location; the Manual; and other business documentation and communications from MH Franchising. MH Franchising did not present any witnesses and moved for a directed verdict on all of Hagman's claims against it, arguing that there was no evidence to support Hagman's claims and that Rubio's criminal act was a new and independent cause that broke the chain of causation. The trial court denied MH Franchising's requests for a directed verdict.

Based on jury findings, the trial court entered judgment that all the defendants were negligent for causing the occurrence in question; that MH Franchising was fifteen percent responsible; and that Hagman was awarded $1,500,000.00 in damages and $1,800,000.00 in exemplary damages. This appeal followed.

## II. DUTY

In its first issue, MH Franchising argues it is not liable under a negligence theory to Hagman because (a) it did not retain control over MH Alden Bridge's hiring, firing, and supervision of employees; (b) MH Franchising was unaware of any complaints about MH Alden Bridge or Rubio; (c) Texas required Rubio to be licensed by the State of Texas, undergo a criminal background check, and complete hundreds of hours of professional education and training; and (d) the

3

additional background check performed by MH Alden Bridge revealed no sexually-based crimes or allegations. MH Franchising also argues under its first issue that (e) Rubio's intentional criminal act was a superseding cause of Hagman's sexual assault; and (f) there was no evidence of breach and causation.

## A.   APPLICABLE LAW & STANDARD OF REVIEW

The existence of a duty is generally a question of law, and that determination is made from the facts surrounding the occurrence in question. *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *see Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). When the issue on appeal is a question of law, we exercise de novo review and conduct an independent analysis of the record to arrive at our own legal conclusion. *See El Paso Nat'l Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999); *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 850 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

A contract may impose control upon a party thereby creating a duty of care. *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999). Whether a franchisor owes a duty of a care to a franchisee's customer is analyzed by the same legal principles governing the duties owed by a general contractor or premises owner based on the exercise of control over the franchisee's work. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605–06 (Tex. 2002); *see, e.g., Fitz v. Days Inn Worldwide, Inc.*, 147 S.W.3d 467, 471 (Tex. App.—San Antonio 2004, pet. denied) ("Whether DIW, as a hotel franchisor, owed a duty to Fitz is analyzed by the same legal principles governing the duties owed by a general contractor or premises owner."); *see also Risner v. McDonald's Corp.*, 18 S.W.3d 903, 906 (Tex. App.—Beaumont 2000, pet. denied) (stating the liability of a franchisor regarding negligence on a franchisee's premises appears to be limited to those franchisors that maintain

control of the activity concerning which negligence is charged).

Thus, when a franchisor exercises some control over a franchisee's work, the franchisor may be liable unless it exercises reasonable care in supervising the franchisee's activity. *See Dow Chem. Co.*, 89 S.W.3d at 606; *see, e.g.*, *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 735 (Tex. 1998) ("The question presented is whether a company that markets and sells its products through independent contractor distributors and exercises control by requiring in-home demonstration and sales, owes a duty to act reasonably in the exercise of that control. We hold that the company does owe such a duty."); *see also Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997) ("This duty requires a general contractor to exercise any retained supervisory control 'with reasonable care as to prevent the work which he has ordered to be done from causing injury to others.'" (quoting Restatement (Second) of Torts § 414 cmt. A)); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (adopting § 414 of the Second Restatement of Torts and recognizing direct liability of a general contractor for failure to reasonably exercise the control it retained over independent contractor).

If the right of control over work details has a contractual basis, then the fact that no actual control was exercised will not absolve a franchisor of liability. *Dow Chem. Co.*, 89 S.W.3d at 606; *see Elliot-Williams Co.*, 9 S.W.3d at 804 ("It is the [contractual] right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner."). The franchisor can be held liable if it has the right to control the means, methods, or details of the independent contractor's work and the power to direct the order in which the work should be done. *See Dow Chem. Co.*, 89 S.W.3d at 606; *see, e.g.*, *Redinger*, 689 S.W.2d at 418 ("There is evidence that Living, Inc. retained the power to direct the order in which the work was to be done and to

forbid the work being done in a dangerous manner."). Further, the control must relate to the injury the negligence causes. *Dow Chem. Co.*, 89 S.W.3d at 606; *see Clayton W. Williams, Jr., Inc.*, 952 S.W.2d at 528.

"Determining whether a contract gives a right of control is generally a question of law for the court rather than a question of fact for the jury." *Dow Chem. Co.*, 86 S.W.3d at 606 (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001)).

**B.    ANALYSIS**

First, we address MH Franchising's argument that it cannot be held liable based on any control it retained over MH Alden Bridge because the jury found that MH Franchising was not in control of Rubio in relation to the negligence that caused Hagman's injury. The jury charge asked whether Oliver, OMG Holdings, and MH Alden Bridge were "strictly subject to the control of [MH] Franchising with respect to the conduct you have found negligent?"; the jury answered "No" as to each. However, whether MH Franchising controlled the means, methods, or details of the masseuses' work and directed the order of their work through the franchise agreement is a question of law; thus, we conduct an independent analysis of the record to arrive at our own legal conclusion. *See id.*; *Lee Lewis Constr., Inc.*, 70 S.W.3d at 783; *Quick*, 7 S.W.3d at 116.

Here, the franchising agreement provided that:

Massage Heights Businesses are operated under a business format per a unique system with high standards of service, including valuable know-how, information, trade secrets, confidential information, training methods, standards, designs, methods of trademark usage, copyrights, sources and specifications, confidential electronic and other communications, methods of internet usage, and research and development ("System"). . . .

[T]he distinguishing characteristics of the System include the

6

trademark "MASSAGE HEIGHTS" "MASSAGE HEIGHTS body+face" and other trademarks and trade names, confidential operating procedures, confidential operations manual, standards and specifications for equipment, services and products, methods of service, management and marketing programs and sales techniques and strategies. All of these distinguishing characteristics may be changed, improved, and further developed by Franchisor from time to time. They are Franchisor's confidential information and trade secrets and are designated by and identified with the marks described in this Agreement.

. . . .

Franchisee acknowledges the importance to the System of Franchisor's high and uniform standards of quality, service and customer satisfaction, and further recognizes the necessity of opening and operating a Massage Heights Business in conformity with the System. . . .

Franchisee recognizes that in order to enhance the value of the System and goodwill associated with it, this Agreement places detailed obligations on Franchisee, including strict adherence to Franchisor's reasonable present and future requirements regarding the types of products sold, services offered, advertising used, operational techniques, marketing and sales strategies and related matters.

Pursuant to the franchise agreement, MH Franchising, through the Manual, controlled the minutia of its franchise locations and of the work performed by the masseuses.[3] MH Franchising specified in its Manual how to train masseuses; how masseuses were to earn the customer's trust; how masseuses were to interact with

---

[3] The franchise agreement states that "Operations Manual" "means, but is not limited to, collectively, all directives, books, pamphlets, bulletins, memoranda, order forms, packing slips, invoices, letters, e-mail, Internet or intranet data, or other publications, documents, software programs, video tapes, transmittances or communications, in whatever form (including electronic form) prepared by or on behalf of Franchisor for use by franchisees generally or for Franchisee in particular, setting forth information, advice and standards, requirements, marketing information and procedures, operating procedures, instructions or policies relating to the operation of the Massage Heights Business or the operation of franchises, as same may be added to, deleted or otherwise amended by Franchisor from time to time. The form and content of sthe Operations Manual maintained by Franchisor shall prevail in the event of any dispute regarding the form of or content of the Operations Manual between Franchisor and Franchisee."

clients before, during, and after sessions; what massages the masseuses offered; and how the masseuses were to drape undressed guests. Further, MH Franchising also directed the order in which the franchisee's masseuses were to perform their work and carry out an appointment with a customer.

We conclude that MH Franchising retained control over the means, methods, and details of the massages provided by masseuses in its franchisees' locations as well as the interactions between the masseuses and the clients. *See Dow Chem. Co.*, 89 S.W.3d at 606; *Redinger*, 689 S.W.2d at 418. Therefore, we conclude that MH Franchising owed a duty of reasonable care in connection with the masseuses' provision of massages to customers. *See Read*, 990 S.W.2d at 735 ("Through its contract with Sena, Kirby retains control of specific details of the work by requiring the 'in-home' sales of its vacuum cleaners."); *see also id.* 735–36 ("This duty derives solely from the retained control, not from any balancing analysis."); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) (noting that in determining whether duty exists in retained control case, the focus is on whether the retained control was specifically related to the alleged injury).

MH Franchising argues that its franchisees were in sole control of the hiring and firing of employees and that MH Alden Bridge was the independent contractor and sole operator of its massage business, and thusMH Franchising did not exercise control. That the franchise agreement allowed MH Franchising's franchisee to make independent decisions regarding the hiring, firing, and training of the franchisee's staff does not excuse MH Franchising from the duty to act reasonably with regard the detail over which it did retain control—providing massages to customers by masseuses. *See, e.g., Read*, 990 S.W.2d at 736 ("That Kirby's agreement with the distributors allowed the distributors to independently contract with dealers does not excuse Kirby from the duty to act reasonably with

8

regard to the detail—required in-home sales—over which it did retain control."). Thus, the argument that the franchise agreement provided that the franchisee is an independent contractor and sole operator of its business is not a defense to Hagman's claim. *See id.* at 735–36.

Finally, we note that "Texas courts have held that a duty to investigate a prospective employee exists in situations where the employee will have special access to a particularly vulnerable group." *Doe v. YUM! Brands, Inc.*, 639 S.W.3d 214, 226–27 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see, e.g.*, *Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 868 (Tex. App.—Austin 1997, writ granted), *aff'd*, 990 S.W.2d 732 (Tex. 1998) (concluding vacuum cleaner manufacturer which sold its products only through distributors who acted as independent contractors and hired individuals to make door–to–door sales owed duty to take reasonable precautions to prevent or deter its distributors from hiring persons with histories of crime, violence, or sexually deviant behavior as dealers); *Porter v. Nemir*, 900 S.W.2d 376, 386–87 (Tex. App.—Austin 1995, no writ) (recognizing "heightened obligation to hire and retain competent counselors because their program treated psychologically fragile clientele"); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494, 496 (Tex. App.—El Paso 1990, writ denied) ("The nursing home had a duty to exercise reasonable care in the selection of its medical staff" because "it is foreseeable that a nurse tending to the needs of the aged would have to be a person of sound personality strengths and not be subject to a proven pattern of impulsive behavior"). Evans, MH Franchising's founder and former CEO, was asked whether she understood that a massage therapist was in a power position with the customer in a vulnerable position and she stated, "I do understand that[,] yes." Benjamin testified that the massage setting must be safe because a customer is entering a room with an unknown individual and taking off all or most of her clothes behind a

9

closed door. This further supports the existence of a duty.

### III. BREACH

In its first issue, MH Franchising states there is no evidence of breach of a duty. However, there is evidence that MH Franchising did not provide a list of disqualifying offenses to its franchisees and allowed franchisees to hire masseuses with any type of criminal history. We conclude there is legally sufficient evidence of MH Franchising's breach of duty. *See Scott Fetzer Co.*, 945 S.W.2d at 868; *Porter*, 900 S.W.2d at 386–87; *Deerings W. Nursing Ctr.*, 787 S.W.2d at 496.

### IV. PROXIMATE CAUSATION

MH Franchising also asserts in its first issue that there is no evidence of proximate causation.

Proximate cause consists of two elements: cause-in-fact and foreseeability. *Read*, 990 S.W.2d at 737; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996); *Doe v. Boys Clubs of Greater Dall., Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). The cause-in-fact element of proximate cause is met when there is some evidence that the defendant's act or omission was a substantial factor in bringing about an injury and without which the harm would not have occurred. *Read*, 990 S.W.2d at 737.

Here, evidence showed that MH Alden Bridge performed a background check on Rubio and learned that Rubio was charged with aggravated robbery with a deadly weapon in 2010, evading arrest with a motor vehicle in 2009, misdemeanor burglary of a motor vehicle in 2009, burglary of a vehicle in 2009, and criminal trespass of a habitation in 2008. Nevertheless, Rubio was hired by MH Alden Bridge because MH Franchising allowed the hiring of masseuses with any kind of criminal background. There was also evidence that if MH Franchising had prohibited employment of individuals with violent offenses as masseuses, like

10

Rubio, then Rubio would not have been hired and Hagman would not have been assaulted. We conclude there is legally sufficient evidence to support a cause-in-fact finding. *See Read*, 990 S.W.2d at 737.

In the context of proximate cause, foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Read*, 990 S.W.2d at 737. Foreseeability in the context of causation asks whether an injury might reasonably have been contemplated because of the defendant's conduct. *Id.* Foreseeability does not permit simply viewing the facts in retrospect and theorizing an extraordinary sequence of events by which the defendant's conduct caused the injury. *Id.* Rather, the question of foreseeability involves a practical inquiry based on common experience applied to human conduct. *Id.*

Placing a violent criminal with a history of poor impulse control in a position of power over an undressed and trusting customer behind a closed door poses a foreseeable risk of harm to the customer. *See id.* MH Franchising's business model is based on and geared towards earning each customer's trust.[4] A person of ordinary intelligence should anticipate that an unsuitable masseuse would pose a risk of harm. *See id.*; *see also Scott Fetzer Co.*, 945 S.W.2d at 862 ("Sending a salesperson with a history of criminal offenses or deviant sexual behavior into the home of an elderly individual or a homemaker alone or with small children, in an environment where the resident could easily be impeded from calling for help, is calculated to create a risk that an ill-intentioned salesperson will take advantage of the customer in some way."). We conclude there is legally sufficient evidence of proximate causation.

---

[4] Hagman's medical records indicate that she informed her medical provider that "She had built trust with this massage therapist for the last 6 months."

11

We overrule MH Franchising's first issue.[5]

## V. SUPERSEDING CAUSE

In its third issue, MH Franchising argues that Rubio's criminal act was a superseding cause of Hagman's injury.

A "new and independent cause" is one that intervenes between the original wrong and the final injury so that the injury is attributed to the new cause rather than the original and more remote cause. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.); *Phoenix Ref. Co. v. Tips*, 81 S.W.2d 60, 61 (Tex. 1935); *Rampersad v. CenterPoint Energy Hous. Elec., LLC*, 554 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2017, no pet.). However, a new and independent cause cannot arise from the negligence of the plaintiff or the defendant. *E.g.*, *Motsenbocker v. Wyatt*, 369 S.W.2d 319, 324 (Tex. 1963) (defendant's negligence); *see also, e.g.*, *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 844 (Tex. App.—Fort Worth 2006, no pet.) (plaintiff's negligence); *Biaggi v. Patrizio Rest. Inc.*, 149 S.W.3d 300, 305–06 (Tex. App.—Dallas 2004, pet. denied) (same). To be a new and independent cause, the intervening cause must be both unforeseeable and a superseding cause of the injury. *See Dew*, 208 S.W.3d at 451; *Critical Path Res. v. Cuevas,* 561 S.W.3d 523, 554 (Tex. App.—Houston [14th Dist.] 2018, pet. granted, judgm't vacated w.r.m.), *supplemented*, 582 S.W.3d 348 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A new and independent cause is not an affirmative defense but something for the fact-finder to consider in determining proximate cause. *Critical Path Res.*, 561 S.W.3d at 555.

---

[5] Because we overruled MH Franchising's first issue challenging the elements of Hagman's negligence claim, we need not address MH Franchising's second issue challenging the elements of Hagman's negligent-undertaking claim. *See* Tex. R. App. P. 47.1. To the extent MH Franchising argues under its first issue that Rubio's intentional criminal act was a superseding cause of Hagman's sexual assault, we address this argument in conjunction with MH Franchising's third issue below, which advances the same argument.

Here, Rubio's criminal act arose out of the negligence of MH Franchising. As previously concluded, sending a violent person with an extensive criminal history into a Massage Heights massage room creates a foreseeable risk of harm to the customer. *See Read*, 990 S.W.2d at 737. Furthermore, there was evidence that the danger of sexual assault presented by a masseuse was foreseeable. Thus, we reject MH Franchising's argument that it can avoid liability because Rubio's sexual assault was a superseding cause of Hagman's injury. *See Dew*, 208 S.W.3d at 451.

MH Franchising argues next that the jury's fifteen percent apportionment of liability should be reversed because there is legally insufficient evidence that MH Franchising caused or contributed to cause Hagman's sexual assault. MH Franchising bases its contention on its previous arguments that it did not owe a duty to Hagman and that Rubio's criminal act was an intervening and superseding cause, which we have previously rejected. Therefore, we reject this argument as well.

We overrule MH Franchising's third issue.

## VI. EXEMPLARY DAMAGES

In its third issue, MH Franchising argues that Texas Civil Practice and Remedies Code § 41.005(a) prohibits exemplary damages in lawsuits that arise from harm resulting from an assault or a criminal act of another, and thus, the award of exemplary damages to Hagman must be reversed. In response, Hagman contends that (1) the jury did not award exemplary damages based on Rubio's criminal conduct but rather from the harm caused by MH Franchising's gross negligence; and (2) the acts of MH Franchising were not concurrent with the acts of Rubio.

## A.    APPLICABLE LAW

Here, the jury found that MH Franchising was grossly negligent. Generally, an affirmative finding by the jury of either gross negligence or malice will support an award of exemplary damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).

However, Texas Civil Practice and Remedies Code § 41.005, titled "Harm Resulting from Criminal Act," provides:

> (a) In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another.

> (b) The exemption provided by Subsection (a) does not apply if:

>> (1) the criminal act was committed by an employee of the defendant;

>> (2) the defendant is criminally responsible as a party to the criminal act under the provisions of Chapter 7, Penal Code;

>> (3) the criminal act occurred at a location where, at the time of the criminal act, the defendant was maintaining a common nuisance under the provisions of Chapter 125, Civil Practice and Remedies Code, and had not made reasonable attempts to abate the nuisance; or

>> (4) the criminal act resulted from the defendant's intentional or knowing violation of a statutory duty under Subchapter D, Chapter 92, Property Code, and the criminal act occurred after the statutory deadline for compliance with that duty.

> (c) In an action arising out of a criminal act committed by an employee, the employer may be liable for punitive damages but only if:

>> (1) the principal authorized the doing and the manner of the act;

>> (2) the agent was unfit and the principal acted with malice in employing or retaining him;

>> (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or

14

(4) the employer or a manager of the employer ratified or approved the act.

Tex. Civ. Prac. & Rem. Code Ann. § 41.005.

Section 41.005 bars exemplary damages for negligence occurring concurrently with a criminal act. *See, e.g.*, *Healthcare Ctrs. of Tex., Inc. v. Rigby*, 97 S.W.3d 610, 620 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (concluding that the defendant's conduct of allowing a resident—who the defendant knew was a sexual threat to others—to remain at the defendant's nursing home exposed another resident to the danger of sexual assault that resulted in harm to the other resident by sexual assault), *overruled on other grounds by Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005); *see also, e.g.*, *Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823, 826 (Tex. App.—Tyler 2012, no pet.) (concluding that the defendant's conduct of not having enough change in the store exposed its employee to the danger of walking across a busy roadway to obtain change, which resulted in harm to the employee by being struck and killed by a drunk driver); *Jung v. 24 Hour Fitness USA, Inc.*, No. 4:17-CV-787, 2019 WL 3037537, at *5 (E.D. Tex. July 11, 2019) (mem. op. & order) (concluding that defendant's employees' conduct (cutting plaintiff's lock) exposed plaintiff to danger (potential theft) that resulted in the harm plaintiff suffered and recovered for at trial (the theft of her property from the locker)); *Bhatti v. Concepts Am., Inc.*, No. 3:14-CV-3445-L, 2016 WL 3880747, at *2, 16 (N.D. Tex. July 18, 2016) (mem. op. & order) (concluding that the defendant's conduct (serving alcohol to a patron who was increasingly aggressive toward the plaintiff) exposed the plaintiff to danger (a fight) that resulted in harm to the plaintiff (the patron caused injury by throwing a glass at the plaintiff)).

**B.    ANALYSIS**

MH Franchising argues § 41.005 bars the award of exemplary damages because the cause of Hagman's injury is Rubio's criminal act. We agree.

Here, Hagman argued at trial that Rubio was an employee of MH Alden Bridge, no evidence to the contrary was presented, and Hagman does not argue on appeal that Rubio was an employee of MH Franchising. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.005(b)(1). Further, Hagman's live pleading states that it was Rubio's sexual assault that caused her harm and discusses a "substantial problem with sexual abuse and/or sexual assault" in the massage industry. Hagman's pleading also stated that Hagman "suffered damages as a result of this traumatic event and/or negligence and/or intentional misconduct of Defendant Rubio." Thus, we conclude Hagman's pleading directly implicates Rubio's criminal act.

Hagman argues that the jury did not award exemplary damages based on Rubio's criminal conduct but rather based on the harm caused by MH Franchising's gross negligence and that the acts of MH Franchising were not concurrent with the acts of Rubio. We reject Hagman's argument because the injury to Hagman is indivisible between MH Franchising's negligence and the concurrent criminal act of Rubio. *See Healthcare Ctrs. of Tex., Inc.*, 97 S.W.3d at 620. As noted above, Hagman's petition stated that she suffered harm because of Rubio's criminal act, which was made possible by the negligence of MH Franchising. Stated differently, MH Franchising's negligence combined with Rubio's criminal act caused Hagman's harm. *See id.*; *see also Bhatti*, 2016 WL 3880747, at *16 ("Plaintiff's attempt to characterize his gross negligence claim as a request for exemplary damages for Prime Bar's actions or omissions on October 20, 2012, does not take the claim out of 41.005(a)'s reach because the essence of the claim is that he was injured as a result of being assaulted by Browning, another

16

patron at the bar. Bhatti's contention that Prime Bar failed to intervene or take other action does not change the nature of his claim."). We conclude that § 41.005 bars Hagman from recovering exemplary damages from MH Franchising. *See, e.g.*, *Healthcare Ctrs. of Tex., Inc.*, 97 S.W.3d at 619–20 ("Because the plaintiff admitted her harm was caused by the criminal conduct of Jones, she is barred from recovering exemplary damages under section 41.005 despite the jury's finding that Healthcare acted with malice.").

We sustain MH Franchising's third issue.

## VII.    NEW TRIAL

In its fourth issue, MH Franchising argues that a new trial is warranted because of the conduct of Hagman's counsel, the improper admission of other allegations of sexual assault throughout Massage Heights locations, and their cumulative effect on the trial.

To the extent MH Franchising complains that the trial court made evidentiary errors when it admitted evidence of allegations of other sexual assaults at Massage Heights locations, we conclude that argument is waived because MH Franchising provides no standard of review, citations to applicable law, or substantive discussion explaining why the trial court abused its discretion in admitting the exhibits. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record."). The same is true of MH Franchising's complaint of improper arguments and comments by Hagman's counsel, in addition to MH Franchising's failure to cite the record in support of its contention that Hagman's counsel improperly used the word "rape." *See id.*; *see also San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that "parties asserting error on appeal still must put forth some

17

specific argument and analysis showing that the record and the law supports their contentions"); *Grimm v. Grimm*, 864 S.W.2d 160, 163 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("The burden of showing reversible error is on appellant as the complaining party."); *Barham v. Turner Const. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) ("[A]n appellant has the burden to show that the record supports contentions urged . . . ."); *Miller v. Miller*, No. 14-17-00293-CV, 2018 WL 3151241, at *14 (Tex. App.—Houston [14th Dist.] June 28, 2018, no pet.) (mem. op.) ("This court has no duty to search a voluminous trial record to determine whether an assertion of reversible error is valid.").

We overrule MH Franchising's fourth issue.

## VIII. CONCLUSION

We reverse the part of the trial court's judgment awarding punitive damages against MH Franchising and affirm the remainder of the judgment.

/s/    Margaret "Meg" Poissant
       Justice

Panel consists of Justices Bourliot, Poissant, and Wilson.